1

2                                                          **E-Filed 12/1/2008**

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                              **SAN JOSE DIVISION**

11   WILLIAM A. ASHMAN,                    Case Number C 08-1430 JF (HRL)

12                      Plaintiff,          ORDER[1] (1) DENYING MOTION TO
                                            DISMISS; (2) GRANTING MOTION
13            v.                            TO COMPEL RETURN OF
                                            IMPROPERLY OBTAINED
14   SOLECTRON CORPORATION, et al.,         DOCUMENTS; (3) GRANTING IN
                                            PART MOTION TO EXCLUDE
15                      Defendants.         IMPROPERLY OBTAINED
                                            DOCUMENTS; AND (4) DENYING
16                                          MOTION TO DISQUALIFY
                                            COUNSEL
17
                                            [re:  doc. no. 19]
18

19

20

21

22       Defendant Solectron Corporation ("Solectron") moves to dismiss the first amended

23   complaint ("FAC") of Plaintiff William A. Ashman ("Ashman") as a sanction for Ashman's

24   improper retention and theft of Solectron documents prior to filing the instant action.  In the

25   alternative, Solectron seeks an order that Ashman return all improperly obtained documents and

26   bar their use for the remainder of the instant litigation.  Solectron also moves for disqualification

27

28
        _____
            [1] This disposition is not designated for publication in the official reports.

1  of Ashman's current counsel.  For the reasons set forth below, the motions to dismiss and to

2  disqualify counsel will be denied.  The motion to compel the return of documents will be

3  granted, and the motion to preclude use of the documents will be granted in part.

### I. BACKGROUND

Solectron is an international electronics manufacturer and supply chain services provider.
On July 21, 2003, Solectron hired Ashman as an IT server administrator for its Milpitas,
California facility.  Ashman was fifty-two years old when he was hired.  As a condition of
employment, Ashman signed Solectron's Employee Proprietary Information Agreement, which
required that employees return all company documents upon termination.[2]  Shortly after his
hiring, Ashman was diagnosed with a form of cancer.  Ashman thereafter took two medical
leaves of absence, the first lasting from September 9, 2003 until November 21, 2003.  The
second leave of absence began on October 22, 2004 and ended when Ashman returned to work
on February 21, 2005.

During the fall of 2004, concurrent with Ashman's second leave of absence, Solectron
began to reorganize its workforce in a cost-reduction effort.  This reorganization included
employee layoffs.  After Ashman returned from his second leave of absence, he learned that he
had been designated for layoff.  The parties dispute the sequence of events with respect to the
notice provided to Ashman regarding his termination.  Solectron claims that Ashman was

---

[2] The relevant portion of the Agreement states:

> <u>Returning Company Document</u> [sic].  I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, listrs [sic], correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to the Company, its successors or assigns.

2

notified upon or shortly after his return to work on February 21, 2005. Ashman alleges that rather than informing him immediately of his termination, Solectron instead appointed him to help with administrative aspects of the reorganization. According to Ashman, part of this task included accessing certain documents associated with the reorganization. Ashman alleges that as a result of such access he discovered a document indicating that he had been designated for layoff. Ashman claims that he then confronted a supervisor with his concerns and was assured that his position was safe. Ashman alleges that Solectron then removed this document from its computer network. By Ashman's account, on March 14, 2005 Solectron informed Ashman that he had been designated for layoff and that his last day of employment would be March 31, 2005.

Shortly after his termination, Ashman filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). The complaint alleged that Ashman was terminated due to his age and/or medical condition. As part of the complaint process, Ashman provided the EEOC with Solectron documents that Ashman had obtained while employed. Solectron asserts not only that Ashman's use of the documents violated the terms of his employment agreement, but also that Ashman provided documents that he had no authority to possess even while he was employed.

Ashman also provided the EEOC with documents obtained after his termination. In June 2006, Solectron initiated an audit of its e-mail accounts and discovered that an individual was logging into Solectron's computer network and reading the e-mail communications of high-level Solectron managers. Solectron reported this incident to local law enforcement authorities in Milpitas, who determined that Ashman was responsible for the activity. Ashman subsequently was arrested and admitted that he had been accessing internal Solectron e-mails and other documents in order to obtain evidence to bolster his EEOC complaint. On July 19, 2007,

3

Ashman pled no contest to a misdemeanor violation of Cal. Penal Code § 502(c)(2).   Solectron

reported this incident to the EEOC as part of its defense against the discrimination charge.

Notwithstanding Ashman's actions, on December 19, 2007 the EEOC issued a right to sue letter.

Ashman filed the instant action on March 13, 2008, and the operative FAC was filed on March

18, 2008.

Ashman served his initial disclosures pursuant to Fed. R. Civ. P. 26 on July 1, 2008.

Included in the disclosures were multiple documents that appeared to have been obtained both

during his employment and after his termination.   The disclosures also included a number of

privileged documents.   Solectron then contacted Ashman's counsel and demanded the return of

all Solectron documents in Ashman's possession.   Solectron also requested that Ashman

voluntarily dismiss the FAC or replace his counsel in light of the fact that Ashman's current

counsel had viewed privileged Solectron documents.   In response, Ashman's counsel refused to

return the documents and argued that Ashman's actions were justified in light of Solectron's

failure to produce certain documents during the initial round of discovery.

## II. DISCUSSION

A federal court has inherent power to impose sanctions "to prevent abuses, oppression,

and injustice."   *Gumbel v. Pitkin*, 124 U.S. 131, 144 (1888).   When a party wrongfully obtains

documents outside the normal discovery process, a number of different types of sanctions are

available.   These include dismissal of the action, the compelled return of all documents,

restrictions regarding the use of the documents at trial, disqualification of counsel, and monetary

sanctions.   *See Fayemi v. Hambrecht & Quist, Inc*., 174 F.R.D. 319, 324-27 (S.D.N.Y. 1997).

A.  Dismissal of the FAC

Dismissal is a "harsh sanction," and courts must consider multiple factors when

4

considering such a request, including "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Henry v. Gill Indus., Inc*., 983 F.2d 943, 948 (9th Cir. 1993)). The party to be sanctioned must have acted in bad faith. *Id.* at 348. Moreover, there must be a relationship between the behavior in question and the merits of the case such that the "transgression 'threaten[s] to interfere with the rightful decision of the case.'" *Id*. (quoting *Wyle v. R.J. Reynolds Indus., Inc*., 709 F.2d 585, 591 (9th Cir.1983)).[3]

Solectron analogizes the instant case to *Jackson v. Microsoft Corp*., 211 F.R.D. 423 (W.D. Wash. 2002), in which the court sanctioned the plaintiff by dismissing the complaint. In *Jackson*, the plaintiff was a former employee who alleged various civil rights violations by his employer. After the litigation began, it was discovered that prior to his termination the plaintiff had come into the possession of two compact disks containing approximately 10,000 e-mail messages copied from his former employer's computer network without authorization. *Id.* at 426. The court found that the plaintiff's "conduct was willful and exemplifies the bad faith with which he has pursued this litigation." *Id*. at 431. It concluded that the plaintiff's "astonishing pattern of deceptive acts and fraudulent testimony" were serious offenses and warranted

---

[3] Similar considerations were identified by the Ninth Circuit in a decision preceding *Anheuser-Busch*. In *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988), the court listed the following relevant factors: "(1) the existence of certain extraordinary circumstances; (2) the presence of willfulness, bad faith or fault by the offending party; (3) the efficacy of lesser sanctions; (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case; and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake."

dismissal of the case, especially because the plaintiff never gave a credible explanation as to how he had obtained the documents or as to why he failed to produce the documents after months of litigation. *Id*. at 432. The court also found that any lesser sanction would not outweigh the prejudice to the former employer. *Id*.

Solectron argues that Ashman's conduct is at least as egregious as that described in *Jackson*. It asserts that Ashman's bad faith is evidenced by his continuous and unlawful access to Solectron's computer network after the date of his termination, his use of the unlawfully obtained documents in both the EEOC investigation and the instant action, and the lack of any real justification as to why all of the documents should not be returned, despite repeated written requests by Solectron. Solectron argues that it has suffered irremediable prejudice from Ashman's actions and that dismissal is the only adequate sanction. In response, Ashman argues that his actions were justified in light of his concern that Solectron would delete incriminating documents, thereby preventing any chance that he would succeed at trial. In essence, Ashman asserts that he had to act in order to prevent possible spoliation of the evidence. Ashman also has repeatedly justified his conduct as being a protected activity under applicable anti-discrimination law.[4]

While Ashman's claim that he was trying to preserve evidence may tend to show that he did not act with subjective bad faith, Ashman is bound by the same discovery rules as any other

---

[4] Ashman suggests that the instant case is distinguishable from *Jackson* because any misappropriation occurred prior to the commencement of formal litigation and thus his actions did not violate any order of the Court or procedural rules. However, other courts have rejected this distinction. *See*, *e.g.*, *Fayemi*, 174 F.R.D. at 324 ("a court must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct."). *See also Jackson*, 211 F.R.D. at 432 (dismissing case where plaintiff obtained documents prior to initiating litigation).

6

litigant.  Discovery self-help is not a protected activity.  *See O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763-64 (9th Cir. 1996) (anti-retaliation clause of ADEA "protects reasonable attempts to contest an employer's discriminatory practices; it is not an insurance policy, a license to flaunt company rules or an invitation to dishonest behavior.").  However, the Court is inclined to agree with Ashman that dismissal would be too severe a sanction, particularly because the primary policy of resolving litigation on the merits is not outweighed by actual prejudice to Solectron.  Most if not all of the relevant documents taken by Ashman will be produced by Solectron during discovery, and there is no evidence that Ashman or his counsel have engaged in improper conduct since the instant litigation was commenced.  Moreover, as discussed in further detail below, lesser sanctions are available as a remedy.  *See Halaco*, 843 F.2d at 381.

### B.  Return of Documents and Restrictions on Future Use

Obviously, the Court has within its power to order the return of the documents.  *See*, *e.g.*, *Herrera v. Clipper Group, L.P.*, No. 97-CIV-560, 1998 WL 229499, at *3 (S.D.N.Y. May 6, 1998) (proper remedy was to order the plaintiff to return all documents and pay for the costs of bringing the motion).  The Court also may impose restrictions on the use of the documents during the remainder of the litigation.  *See Fayemi*, 174 F.R.D. at 326 (precluding any use of improperly obtained documents at trial); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, No. 08 Civ. 4810, 2008 WL 4866165, at *21-22 (S.D.N.Y. Oct. 23, 2008) (improperly obtained e-mails limited to impeachment purposes only).

In the instant case, the documents at issue (except for privileged documents) likely would have been produced by Solectron.  In such circumstances, courts have been hesitant to exclude the use of such documents entirely.  *See Herrera*, 1998 WL 229499, at *5.  Moreover, excluding

7

or severely limiting the use of the documents in the instant action may create a "windfall strategic

advantage" for Solectron because at least several of the documents at issue form the crux of

Ashman's allegations. *See id.*  Accordingly, within seven days of this order Ashman shall return

all Solectron documents in his possession, whether in electronic or hard-copy form, and any

copies that remain in his possession shall be destroyed.  Ashman is barred from using or referring

to any privileged content within the documents.  After all the documents are returned to

Solectron, Ashman will be permitted to use any document produced by Solectron during the

normal course of discovery.  Ashman will be responsible for the expenses incurred by Solectron

in connection with making the instant motions. *See Herrera*, 1998 WL 229499, at *3.[5]

C.  Disqualification of Counsel

Solectron argues that on two independent grounds Ashman's counsel should be

disqualified.  First, Solectron contends that counsel violated ethical rules by not returning

documents, especially privileged documents, that counsel knew were obtained unlawfully.

Second, Solectron argues that because counsel is aware of the privileged content of some of the

documents, counsel consciously or subconsciously will put that knowledge to use

notwithstanding any constraints imposed by the Court. *See Herrera*, 1998 WL 229499, at *4.

While counsel's actions are cause for concern, the Court concludes that the severe sanction of

disqualification is not appropriate at this time, assuming that going forward Ashman and his

counsel comply with the Court's instructions regarding the return of all Solectron documents and

the prohibitions regarding privileged material.  This conclusion is without prejudice to a future

motion by Solectron in the event that Ashman or his counsel misuse the information of which

[5] To avoid confusion, any expenses incurred by Solectron in connection with the instant motions during the period from August 29, 2008 through November 21, 2008 are reimbursable.

1  they have become aware.

2                              **III.  ORDER**

3         Accordingly, IT IS HEREBY ORDERED that (1) the motion to dismiss is DENIED; (2)
4
5  the motion to compel the return of all improperly obtained documents is GRANTED; (3) the
6  motion to exclude the use of the improperly obtained documents is GRANTED IN PART; and
7  (4) the motion to disqualify counsel is DENIED.  Within seven days of the date of this order,
8
9  Ashman shall return all documents to Solectron in accordance with the instructions set forth
10 above.  Ashman shall be responsible for the expenses incurred by Solectron in connection with
11 making the instant motions.
12 IT IS SO ORDERED.
13
14
15 DATED: December 1, 2008
16                                          _____
                                            JEREMY FOGEL
17                                          United States District Court
18
19
20
21
22
23
24
25
26
27
28

                                    9

1    This Order has been served upon the following persons:

2    Benjamin A. Emmert    bemmert@littler.com

3    Stephen Robert Pappas    PALaw21@aol.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10