**E-Filed 8/4/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM A. ASHMAN,<br><br>                        Plaintiff,<br><br>          v.<br><br>SOLECTRON, INC., a Delaware corporation, and<br>DOES 1 through 10, INCLUSIVE<br>                        Defendants. | Case Number CV 08-1430 JF<br><br>**ORDER[1] GRANTING  IN PART<br>AND DENYING IN PART MOTION<br>FOR SUMMARY JUDGMENT AND<br>DENYING MOTION TO STRIKE**<br><br>[Docket nos. 96, 99] |

Defendant Solectron Corporation ("Solectron") moves for summary judgment. Plaintiff William Ashman opposes the motion, and  moves to strike the testimony and declarations of Grainne Blanchette and Monica Ek offered by Solectron. The Court has considered the moving papers, the declarations, and the oral arguments of counsel presented at the hearing on July 2, 2010. For the reasons discussed below, Solectron's motion will be granted in part and denied in part, and Ashman's motion will be denied.

---

[1] This disposition is not designated for publication in the official reports.

1

2                                    **I. BACKGROUND**

3   **A. Factual Allegations**

4        On July 21, 2003, Ashman, who at the time was fifty-two years old, was hired by Nasser

5   Mirzai, Solectron's Senior Manager for Global Material Systems Information Technology, to

6   work at Solectron's office in Milpitas, California as an IT server administrator. (Pl. Opp'n 3:11-

7   12, June 10, 2010.) As a condition of his employment, Ashman agreed to Solectron's work rules.

8   (Blanchette Decl. ¶ 4, Oct. 2, 2008; Pl. Dep. 45:2-5.) Among other things, Ashman agreed that

9   he would return and not retain any of Solectron's property upon termination of his employment.

10  (Blanchette Decl. ¶ 4, Ex. B.)

11       Along with Darby Winborn, Chanh Chi, and Eric Oo, Ashman was a member of

12  Solectron's Windows NT Support Team. (Pl. Dep. 23:22-24:8.) All four members of the team

13  were generally responsible for maintaining and upgrading Solectron's Windows computers, but

14  each member specialized in certain aspects of the team's day-to-day functions. (Pl. Dep. 37:15-

15  28:2; Mirzai Dep. 22:21-23:4.) All four team members reported directly to June Babilla, who

16  reported to Mirzai.

17       On September 15, 2005, Ashman was diagnosed with squamous cell carcinoma. (Pl.

18  Opp'n 5:3-4.) Pursuant to his physician's instructions, Ashman requested a leave of absence

19  ("LOA") from Solectron. (Pl. Opp'n 5:6.) The LOA was granted, and on October 15, 2004,

20  Ashman began radiation and chemotherapy treatment. (Pl. Opp'n 5:8.) Ashman had informed

21  Babilla of his medical condition, and Alfred Cheung was hired on a ninety-day contract at about

22  the same time. (Pl. Opp'n 5:10-16.) Cheung's job functions included "backup/restore, account

23  management, data center walk-throughs, and 'building' servers." (Pl. Opp'n 6:11.)

24       Ashman claims that during his LOA, he remained in email correspondence with Mirzai

25  and Babilla about his medical condition. On February 21, 2005, Ashman returned to work. (Pl.

26  Opp'n 6:25.) Shortly thereafter, Ashman was notified that he was being laid off. Ashman was

27  told that Solectron needed to reduce cost and that his job tasks could be performed elsewhere at a

28                                        2

1    lower cost. Ashman refused to sign his severance agreement. His last day of employment with

2    Solectron was March 31, 2005.

3    Ashman filed a charge of disability and age discrimination against Solectron with the

4    Equal Employment Opportunity Commission ("EEOC") on April 6, 2005. The EEOC eventually

5    issued a letter of determination finding good cause for the charge. (Ashman Decl. ¶ 16, Ex. D,

6    June 10, 2010.)

7    On or about June 15, 2006, Solectron discovered that there had been unlawful access to

8    its computer system and reported the incident to the Milpitas Police Department. (Blanchette

9    Decl. ¶¶ 11-19.) An investigation determined that the party involved was Ashman. Ashman

10    subsequently pled no contest to related  misdemeanor charges. (Pl. Dep. 98:25-99:16.)

11    In July 2005, Ashman was hired by Taos Mountain, Inc. (Pl. Dep. 114:10-116:6.) He

12    worked there from July 24, 2005 to January 20, 2006, when he resigned voluntarily to work on a

13    political campaign. (Pl. Dep. 116:10-22.) Ashman returned  to Taos Mountain on April 16, 2005,

14    but was terminated on September 27, 2006 because he had used Taos Mountain property in his

15    unlawful access of Solectron's computer system. (Pl. Dep. 116:10-117:25.)

16

17    **B. Procedural History**

18    Ashman filed the instant action on March 3, 2008. The operative amended complaint,

19    filed on March 18, 2008, asserts claims for relief pursuant to: (1) the Americans with Disabilities

20    Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, (2) the Age Discrimination in Employment Act

21    ("ADEA"), 29 U.S.C. §§ 623 *et seq.*, (3) the California Fair Employment and Housing Act

22    ("FEHA"), Cal .Gov. Code § 12926(d), for failing to accommodate a medical condition, (4)

23    FEHA, Cal. Gov. Code § 12940(a), for age discrimination in employment, and (5) California

24    common law, for tortious discharge in violation of public policy.

25

26

27

28                                              3

### III. EVIDENTIARY OBJECTIONS[2]

Solectron objects to portions of Ashman's declaration on the grounds of hearsay, lack of personal knowledge, and impermissible opinion. Hearsay is a statement, other than one made by the declarant, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is inadmissible except as provided by the Federal Rules of Evidence or other rules prescribed by the Supreme Court. The testimony of a witness who does not have personal knowledge of the subject of his or her testimony is inadmissible. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony. Fed. R. Evid. 602. When a witness provides testimony other than as an expert, the witness' testimony in the form of opinions or inferences is limited to those "rationally based on the perception of the witness, and [] helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and [] not based on scientific, technical, or other specialized knowledge. . . ." Fed. R. Evid. 701.

**Objection No. 1**

Solectron objects to Ashman's description of his understanding of Cheung's job duties. Ashman bases his statement on his personal knowledge of the job tasks he and his teammates performed, and he prefaces his statement by indicating that his conclusions are limited by the extent of his personal knowledge. However, at least part of the statement is inadmissible hearsay, specifically: "It is my understanding that Alfred Cheung took over my responsibility when I went on leave of absence in October 2004, and never relinquished it after that." Ashman's understanding is based on the statements of others, and offered for the truth of the matter asserted. SUSTAINED IN PART.

---

[2] Only evidentiary objections affecting the disposition of the instant motion for summary judgment are addressed in this order.

**Objection No. 2**

Solectron objects to Ashman's statement that his supervisor "[Babilla] also told me that she would need to bring in a temporary employee for three months to fulfill my role while I was on leave." (Ashman Decl. ¶ 5.) However, Babilla's alleged statement was made in her capacity and within the scope of her authority as Ashman's supervisor. OVERRULED.

**Objection No. 3**

Solectron objects to Ashman's statement that he received an email from Babilla introducing Cheung and describing Solectron's need to have Cheung fill in for him. Ashman asserts that "[i]n conformity with this expressed need, on October 15, 2004, Ms. Babilla sent an email to her group (including me) introducing Alfred Cheung, a contract employee, and describing for him job duties identical to mine." (Ashman Decl. ¶ 6.) The email was sent by Babilla in her capacity and within the scope of her authority as Ashman's supervisor. OVERRULED.

**Objection No. 4**

Solectron objects to Ashman's statement that he discovered documents he characterizes as "smoking guns," including an organizational chart with his name on it that said "LOA" and a presentation showing him as one of four employees to be included in a reduction in force at Solectron. Ashman has not shown that he has personal knowledge as to when the documents were created or who created them. SUSTAINED.

**Objection No. 8**

Ashman asserts that, "Solectron never engaged in any kind of interactive process with me to determine how to accommodate my cancer disability, other than Ms. Babilla telling me to take as much time as I needed and that she would hire a temporary employee." (Ashman Decl. ¶ 13.) Although it cannot be offered as a legal conclusion, the statement is probative with respect to

5

1    Ashman's experience of Solectron's handling of his termination. OVERRULED.

2

3    **Objection No. 11**

4         Solectron objects to Ashman's statement that, "It is my understanding that Alfred

5    Cheung, the contractor who had been engaged by Solectron to fulfill my duties while I was on

6    medical leave, remained with Solectron after my termination in the same capacity in which he

7    had been hired." (Ashman Decl. ¶ 15.) Solectron may cross-examine Ashman as to the basis for

8    his understanding. OVERRULED.

9

10   **Objection No. 12**

11        Solectron objects to Ashman's statement that he filed a charge with the EEOC and that

12   among the documents he provided was a so-called "smoking gun" document that Ashman had

13   accessed and downloaded from a Solectron account without authorization. The statement is as

14   follows:

15            I filed a charge of discrimination based on disability and age with the
             United States Equal Employment Opportunity Commission
16            ("EEOC") on April 6, 2005. Among other documents, I submitted the
             above-mentioned "smoking gun" documents and Babilla email to the
17            EEOC as evidence of discrimination. After investigating, the EEOC
             issued a Determination finding '... reasonable cause to believe that
18            [Solectron] violated the ADEA and ADA' on July 7, 2007, but was
             unable to resolve the matter through negotiation.
19

20   (Ashman Decl. ¶ 16.) Solectron quotes the Court's December 1, 2008 order barring Ashman

21   from using or referring to any privileged documents, but it ignores the following statement in

22   that order: "After all the documents are returned to Solectron, Ashman will be permitted to use

23   any document produced by Solectron during the normal course of discovery." (Order Granting

24   Mot. to Compel Return 9:7-11, Dec. 1, 2008.) Magistrate Judge Lloyd since has ordered that the

25   so-called "smoking gun"document be provided to Ashman. OVERRULED.

26

27

28                                              6

### III. MOTION TO STRIKE

**A. Legal Standard**

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Fed. R. Civ. P. 26(a) requires, in part, that a party "without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information..." Rule 26(e) requires a party to supplement its Rule 26(a) disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing..."

Whether a supplemental disclosure is timely is determined not only by the circumstances under which the complaining party learned of the incomplete or incorrect disclosure but also by deadlines set by the trial court.

> In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005).

**B. Discussion**

Pursuant to Fed. R. Civ. P. 37(c), Ashman moves to bar Solectron from using any testimony of Monica Ek and Grainne Blanchette and to strike their declarations. (Mot. to Strike 2:2-8, May 28, 2010.) As a threshold issue, Solectron contends Ashaman's motion is procedurally defective pursuant to Fed. R. Civ. P. 7 and this Court's local rules and that these

1  defects "significantly prejudice[] Solectron's ability to anticipate and respond to the motion."

2  (Def. Opp'n 9:26-27, June 11, 2010.) However, Ashman's motion appears to comport with the

3  applicable federal and local rules.

4      Discovery in this action closed on March 31, 2010. Any supplemental disclosure after

5  such date would be untimely. *See Wong*, 410 F.3d at 1062 (concluding the supplemental

6  disclosure made two days after notice of incomplete disclosure but *after* deadline for discovery

7  cut-off was "tardy...nor...harmless"). Solectron nonetheless argues that Ek's declaration should

8  not be stricken because Ashman knew that Ek was a likely witness and was aware of the scope

9  of her possible testimony. (Def. Reply to Mot. to Strike 19:3-4.) The Court agrees. Ek's

10  declaration provides additional evidence of Solectron's termination practices. To the extent that

11  Ek is testifying as a custodian of records, the Court perceives no prejudice to Ashman. To the

12  extent that Ek is testifying from her personal knowledge as a human resource manager, the scope

13  of her testimony was entirely foreseeable.

14      Solectron relies on Blanchette's declaration to support its argument with respect to the

15  limitation on back pay that might be awarded should Ashman prevail on his claims of

16  discrimination or wrongful termination. Although Blanchette's declaration was not formally

17  disclosed previously, Ashman had notice of the substance of Blanchette's testimony on October

18  2, 2008, when Blanchette filed a declaration in connection with Solectron's motion to dismiss.

19  (Doc. No. 31, Nov. 3, 2008.) The motion to strike is denied.

20

21  **IV. SUMMARY JUDGMENT**

22  **A. Legal Standards**

23      **1. Rule 56(c)**

24      A motion for summary judgment should be granted if there is no genuine issue of

25  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

26  56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  Material facts are those

27  that might affect the outcome of the case under the governing law.  *Id.* at 248.  There is a genuine

28

8

1    dispute about a material fact if there is sufficient evidence for a reasonable jury to return a

2    verdict for the nonmoving party. *Id.* The moving party bears the initial burden of informing the

3    Court of the basis for the motion and identifying portions of the pleadings, depositions,

4    admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex*

5    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the party moving for summary judgment

6    would not bear the ultimate burden of persuasion at trial, it must either produce evidence

7    negating an essential element of the nonmoving party's claim or defense or show that the

8    nonmoving party does not have enough evidence of an essential element to carry its ultimate

9    burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

10   (9th Cir. 2000). If the moving party meets its initial burden, the burden shifts to the nonmoving

11   party to present specific facts showing that there is a genuine issue of material fact for trial. Fed.

12   R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

13       The evidence and all reasonable inferences must be viewed in the light most favorable to

14   the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-

15   31 (9th Cir. 1987). Summary judgment thus is not appropriate if the nonmoving party presents

16   evidence from which a reasonable jury could resolve the material issue in its favor. *Anderson*,

17   477 U.S. at 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991). A high standard

18   for granting summary judgment is particularly appropriate in a discrimination case "because the

19   ultimate question is one that can only be resolved through a searching inquiry - one that is most

20   appropriately conducted by a fact-finder, upon a full record." *Schnidrig v. Columbia Mach., Inc.*

21   80 F.3d 1406, 1410 (9th Cir.1996) (quoting *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1563 (9th

22   Cir. 1994)).

23

24       **2. The parties' respective burdens**

25       The ADA and FEHA prohibit an employer from discriminating against a qualified

26   individual because of a disability. 42 U.S.C. § 12112(a); Cal. Gov. Code § 12940(a). Under both

27   California and federal law, an individual is qualified if he or she can fulfill the essential

28                                            9

functions of the position. 42 U.S.C. § 12112(b)(5); Cal. Gov. Code § 12940(a). The ADEA and FEHA prohibit an employer from discriminating against employees above the age of forty on account of their age. 29 U.S.C. §§ 623(a)(1), 631(a); Cal Gov. Code § 12940(a).

In cases in which direct evidence of discrimination is lacking, a plaintiff first must establish a *prima facie* case of discrimination. *See Ritter v. Aircraft Co.*, 58 F.3d 454, 456 (9th Cir. 1995)  ("Standards of proof in ADEA discrimination suits parallel those in Title VII suits."). Specifically, the plaintiff must show that (1) he is covered under the respective law, (2) he was performing his job satisfactorily, (3) he suffered an adverse employment action; and (4) the relevant circumstances support an inference that such action was taken because of his membership in a covered class. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 506 (2002) ("[T]he precise requirements of the *prima facie* case can vary with the context and were 'never intended to be rigid, mechanized, or ritualistic.'") (internal citation omitted).

Once the plaintiff has established a *prima facie* case of employment discrimination, the burden then shifts to the employer to present evidence that it had a non-discriminatory reason for its action. If the employer has carried its burden, the plaintiff "then must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for [termination] were in fact a coverup for a. . . discriminatory decision." *Id.* at 805. This "shift back to the plaintiff does not place a new burden of production on the plaintiff." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1169-70 (9th Cir. 2007). The burden on the defendant, "having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (internal citation omitted). The plaintiff then must establish through either direct or circumstantial evidence a reasonable inference that the adverse employment decision was due in wholly or in part to discriminatory intent, thus countering the non-discriminatory reason provided by the employer. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004). *See also Schnidrig*, 80 F.3d at 1409 ("[V]ery little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive. . . may suffice to raise a question that can only

10

1   by resolved by a fact-finder."); *Lam*, 40 F.3d. at 1564 ("We require very little evidence to

2   survive summary judgment precisely because the ultimate question is one that can only resolved

3   through a 'searching inquiry'–one that is most appropriately conducted by the fact finder, upon a

4   full record.")

5       In *Noyes,* the Ninth Circuit articulated two possible ways in which a plaintiff can show

6   that the employer's reason was pretextual: "(1) *indirectly*, by showing that the employer's

7   proffered explanation is unworthy of credence because it is internally inconsistent or otherwise

8   not believable, or (2) *directly*, by showing that unlawful discrimination more likely motivated

9   the employer." 488 F.3d at 1170 (emphasis in the original). "These two approaches are not

10  exclusive; a combination of the two kinds of evidence may in some cases serve to establish

11  pretext so as to make summary judgment improper. In this case, while the indirect evidence and

12  direct evidence are independently sufficient to allow the [plaintiffs] to proceed to trial, it is the

13  cumulative evidence to which a court ultimately looks." *Chaung v. Univ. of Cal. Davis*, 225 F.3d

14  1115, 1127 (9th Cir. 2000). However, the plaintiff cannot defeat a defendant's motion for

15  summary judgment merely by questioning the credibility of the defendant's proffered reason for

16  the challenged employment action. *See Cornwall v. Electra Cent. Credit Union*, 439 F.3d 1018,

17  1028 n.6 (9th Cir. 2006).

18

19  **B. Disability discrimination claims (Claims 1 and 3)**

20      Solectron concedes for the purposes of the instant motion that Ashman can establish a

21  *prima facie* case under the ADA and FEHA. Ashman alleges that he was treated differently from

22  similarly situated non-disabled employees, and that Solectron failed to accommodate his

23  disability. However, Solectron asserts that Ashman was selected for termination "after his

24  primary job duties were transferred from Milpitas to Mexico as part of Solectron's Company-

25  wide cost cutting reorganization necessitated by adverse economic conditions." (Def. Reply to

26  Summ. J. 3:20, June 18, 2010.)

27      The Court concludes there is a genuine issue of material fact as to whether Mirzai knew

28                                              11

that Ashman had cancer and terminated Ashman on the pretext of a cost-cutting reorganization. It is undisputed that Mirzai selected Ashman for termination. (Mirzai Dep. 62:5-10.) It also is undisputed that Solectron conducted an internal review that considered personnel changes for the purpose of lowering costs. At the same time, Mirzai's assertion that he did not know that Ashman had taken a LOA because of cancer is inconsistent with his testimony with respect to his supervisory responsibilities and his statement that he had intimate knowledge of the job duties of Ashman's team. Mirzai's assertion also is inconsistent with the statement of Ashman's immediate supervisor Babilla–who did know that Ashman was on leave for treatment of his cancer–that "if one of my staff is sick and going to be needing to take time off, I would be notifying [Mirzai] of that . . . ." (Babilla Dep. 23:11-13, 30:13-31:3.) The record also contains correspondence from Ashman to Mirzai discussing Ashman's medical status and treatment. (Mirzai Dep. 39:23-40:20, 45:24-57:11.)

Solectron claims that Ashman's duties did not require "hands on work on the physical computer infrastructure" but instead involved primarily computer account administration, a type of work that easily could be outsourced. (Mot. Summ. J. 4:1-8, May 21, 2010.) This claim is inconsistent with Babilla's deposition testimony. (Babilla Dep. 20:15-21:2.) The record also supports a reasonable inference that Cheung was hired to fill in for Ashman during the LOA. Indeed, there is evidence that Mirzai directly sought permanent employment for Cheung after Ashman's termination despite Mirzai's stated desire to reduce Solectron's employee headcount. (Pappas Decl. Ex. 7.)

In addition, the Court takes note of the EEOC's determination that Ashman had good cause to bring a charge of disability discrimination. *See Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39 (1976) ("Prior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo.")

**C. Age discrimination claims (Claims 2 and 4)**

Ashman alleges that Solectron discriminated against him because of his age. To establish

12

1  a *prima facie* case of age discrimination, Ashman must show he was a protected under the

2  ADEA and FEHA, that he was performing his job satisfactorily, that he suffered an adverse

3  employment action, and that the relevant circumstances permit an inference of discrimination on

4  the basis of age. Reviewing all the evidence in the record, the Court concludes that Solectron is

5  entitled to summary judgment on Ashman's age discrimination claims. Ashman conceded at his

6  deposition that although his age "could have been" a reason for his termination, "[t]he main

7  reason I was terminated was because I was–my leave of absence for cancer." (Pl. Dep. 88:11-

8  15.) While the record contains substantial evidence that Ashman's medical condition may have

9  affected Solectron's employment decisions, there is no evidence other than Ashman's own

10  speculation that age had any role in such decisions.

11

12  **D. Wrongful termination in violation of public policy (Claim 5)**

13          To establish a claim for wrongful termination in violation of public policy, a plaintiff

14  must prove the employer violated a statutory or regulatory provision in terminating his

15  employment. *See Foley v. Interactive Data Corp.*, 765 P.2d 373,  379 (Cal. 1988). As discussed

16  above, the Court concludes that Solectron is not entitled to summary judgment on Ashman's

17  claims of disability discrimination, which are based on federal and state statutes.

18

19                              **V. LIMITATION OF DAMAGES**

20          As an alternative to summary judgment, Solectron seeks a ruling limiting Ashman's

21  entitlement to back pay, front pay, and punitive damages. Solectron relies on the well-established

22  principle that:

23              Once an employer learns about employee wrongdoing that would
              lead to a legitimate discharge, [a court] cannot require the employer
24              to ignore the information, even if it is acquired during the course of
              discovery in a suit against the employer. . . .[F]ormulation of a
25              remedy should be calculation of backpay from the date of the
              unlawful discharge to the date the new information was discovered.
26              In determining the appropriate order for relief, the court can consider
              taking into further account extraordinary equitable circumstances that
27              affect the legitimate interests of either party.

28                                                13

1    *McKennon v. Nashville Banner Publishing, Co.* 513 U.S. 352, 362 (1995).

2        Solectron argues that any award of damages to Ashman must be limited because Ashman

3    retained company documents after his termination in violation of his employment agreement

4    (Mot. Summ. J. 20:17-19; Pl. Dep. 39:1-22, 40:12-25.) The relevant portion of that agreement

5    required Ashman, upon termination,  to return to Solectron all company documents,

6    correspondence, property, or reproductions in his possession. Solectron contends that Ashman's

7    admitted retention of Solectron documents was "theft of Solectron's property and, had Solectron

8    known Plaintiff improperly retained these documents and had he still been a Solectron employee,

9    it would have terminated his employment immediately and he could not have be rehired." (Mot.

10   Summ. J. 20:25-28.) However, the post-termination provisions of an employment agreement

11   ordinarily may be enforced only where there has been a lawful termination of employment. *See*

12   *Guz v. Bechtal Nat.*, 8 P.3d 1089, 349 (Cal. 2000) ("The covenant of good faith and fair dealing,

13   implied by law in every contract, exists merely to prevent one contracting party from unfairly

14   frustrating the other party's right to receive the *benefits of the agreement actually made.*")

15   (emphasis in original).

16       Solectron also asks the Court to consider Ashman's unlawful conduct in accessing

17   Solectron's computer system on March 31, 2005. Solectron contends that any award of back pay

18   must be cut off as of September 21, 2006, the date on which Solectron discovered Ashman's

19   unlawful access. In *O'Day v. McDonnell Douglas Helicopter Co.* the Ninth Circuit held that,

20   "An employer can avoid backpay and other remedies by coming forward with after-acquired

21   evidence of an employee's misconduct, but only if it can prove by a preponderance of the

22   evidence that it would have fired the employee for that misconduct." 79 F.3d 756, 761 (9th Cir.

23   1996); *accord Washington v. Lake County*, 969 F.2d 250, 255 (7th Cir. 1992); *Smallwood v.*

24   *United Air Lines, Inc.*, 728 F.2d 614, 616 n.5 (4th Cir. 1984).

25       Recognizing that an employer has a strong incentive to limit possible back pay by

26   discovering previously undisclosed wrongdoing on the part of a plaintiff and claiming it would

27   have resulted in immediate discharge, the court observed that an employer cannot merely make a

28                                                    14

"bald assertion" that it would have terminated the employee. *O'Day*, 79 F.3d at 762. However, the plaintiff in *O'Day* did not contest that he had committed wrongdoing, and testimony that the plaintiff would have been terminated was "corroborated by both the company policy...and by common sense." *Id.* (rejecting plaintiff's contention his "rummaging through his supervisor's office for confidential documents" was protected activity.) "[W]e are loathe to provide employees an incentive to rifle through confidential files looking for evidence that might come in handy in later litigation." *Id.* at 763.

Similarly here, Ashman was arrested and pled no contest to accessing Solectron's computer system unlawfully after his termination. (Pl. Dep. 98:25-99:16; Mot. Summ. J. 21:15.) Solectron's assertion that it would have fired Ashman upon discovering that he was looking through private emails of senior Solectron executives, together with the record evidence of Solectron's policy toward such access, is more than sufficient to establish that Ashman would have been terminated. Accordingly, any award of back pay will be limited to the amount that Ashman would have earned from the date of his termination to the date that Solectron discovered Ashman's unlawful access of its computer system. (Mot. Summ. J. 21; Emmert Decl. ¶ 18, May 21, 2010.) *See O'Day*, 79 F.3d at 764 ("[Plaintiff] would be entitled to some remedy for the discrimination. . . . [H]e would at the very least be entitled to backpay from the date of his wrongful termination to the date that [defendant] learned of his wrongdoing. . . .").

## VI. PUNITIVE DAMAGES

Solectron argues that as a matter of law Ashman cannot establish a claim for liquidated or punitive damages under the ADA and FEHA. Both statutes require a showing of a reckless disregard as to whether an employment action was in contravention of law. (Mot. Summ. J. 23:16-20.) As discussed above, there is a genuine issue of material fact as to whether Solectron's cost-cutting plan was a pretext for Ashman's termination. A reasonable jury could find that Solectron knew or recklessly disregarded the fact that such a termination would contravene the ADA or FEHA.

15

1

2                                    **VI. ORDER**

3    Good cause therefor appearing:

4           (1) Solectron's motion for summary judgment is GRANTED IN PART AND DENIED

5    IN PART as set forth above.

6           (2) Ashman's motion to strike is DENIED.

7

8

9           **IT IS SO ORDERED.**

10

11          DATED: 8/4 /2010                    JEREMY FOGEL
                                                 United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          16